JOHN R. EAKINS et al., Appellees, v. W. J. STECKEL et al., Appellants.

SPECIFIC PERFORMANCE: Proceedings and Relief—Evidence— Sufficiency. Evidence reviewed, and held insufficient, in the form pleaded by plaintiff, to decree specific performance of a contract for the purchase of lands.

*Appeal from Davis District Court.*—FRANCIS M. HUNTER, Judge.

MARCH 7, 1918.

PLAINTIFFS obtained decree that defendants execute deed to them without any reservations therein, making the lands conveyed subject to a lease made by defendants to one Kendall. The defendants appeal, and contend that the sale was made subject to such a lease.—*Reversed and remanded.*

*C. W. Ramseyer,* for appellants.

*Payne & Goodson,* for appellees.

SALINGER, J.—I. The trial court found that appellees are entitled to a warranty deed "without conditions or reservations of any character therein, and was entitled to possession of said real estate on and after June 22, 1912." Whether this can be sustained depends upon whether defendant, in selling land on June 22, 1912, made certain

representations, and whether the buyers relied thereon. The plaintiffs and appellees have the burden of proof. John R. Eakins testifies that, before the purchase was completed, he asked defendant "if there were any liens or rents upon the place, and he said 'no';" said further that nobody had anything to do with it except defendant and his wife; that witness informed defendant that, when they· bought, they wanted the land right· away, and defendant answered, "It is yourn right now." The witness adds he did not know at that time that "there was any lease against the land." One, and possibly two, of the appellees corroborate this witness. The defendant denies all this, and his denial is to some extent corroborated by the witness King. It may be conceded appellant is somewhat weakened because of a claim on his part that appellees actually stated the terms of a lease defendant then had with one Kendall. This, clearly, is over-proof—probably an attempt to overcolor the claim that appellees must have known, and did know, that Kendall was then in possession, and was plowing and cultivating under some claim of right to do so. But that the testimony of the appellant has this weakness does not, of course, of itself settle whether appellees have discharged their burden of proving their claim by a preponderance.

If all there is were this direct conflict as to what was said at the time of the dealing, we would not feel justified in overruling the finding of the trial court that the plaintiffs have made out their case. But we feel constrained to differ from the conclusions of the learned trial judge, upon a consideration of all the evidence. We shall, of course, make no attempt to set out the evidence, but must be content with ultimate statements of the same.

We find the appellees have not proven their case, and base this finding upon the following matters, which we hold are either not disputed, or clearly established.

II. W. T. Eakins has withdrawn from this suit. There

is dispute over whether a threat of foreclosure by defendant brought about, or at least influenced, the withdrawal. It may be conceded that, if Eakins had been a witness for the defendant, this dispute might bear on his weight as a witness. But he was a witness for the plaintiffs, and it is not for them to say that his testimony on their behalf is weakened because he had withdrawn from the suit at the instance of defendant. This witness was one of those who negotiated the sale, and testifies that defendant told him, if not the others, that one Kendall had a lease, and said this at the very outset of the negotiations. It is almost beyond reason that defendant should say this to W. T. Eakins only, and, knowing he had said it, and that he *had* leased to Kendall, should thereafter, during the same negotiations, tell all the buyers that there was no lease incumbrance of any kind,—the more so, as it appears that the plaintiff instituted the negotiations, got Steckel to come, so that they might deal; that Steckel was under no particular anxiety to sell; and that he got no unreasonable price.

Promptly after the sale was completed, defendant notified Kendall to substitute the appellees for defendant, and to give them that share of the crop that, up to then, belonged to defendant; and Kendall did so. Of this, more later.

### 2-a

Plaintiffs testify in terms that they wanted immediate possession on the day of this sale: to wit, June 22d, and were assured that they should have possession that very day at noon. If this be so, the conduct of the plaintiffs thereafter is inexplicable. They made no attempt to get possession, or to go near the lands, except that, sometime early in July, John R. Eakins went upon the lands, and was driven off by the tenant Kendall after a physical encounter. If plaintiffs desired, and had an agreement that they could and should have immediate possession, it must be assumed

they thought immediate possession necessary, or at least to their interest; and there is no explanation why, this being so, they acted with reference to getting possession as has been described.

### 2-b

Orman, an entirely disinterested witness, says he at-tempted to become a subtenant of Kendall, and abandoned the project because some one of the appellees (we gather it was John R. Eakins) told him, prior to June 22d, that Or-man had better let renting from Kendall alone; that they were going to buy; and if they bought, they got possession. John R. does not say he never said this, but does say he did not say it either in June or July,—meaning to say, we take it, that, if there was such talk, it was after July, and after the purchase had been made.

To begin with, it is difficult to understand why Orman should be warned off after July with the statement that Eakins would have immediate possession. After July had passed, it was manifest that any agreement there may have been to give immediate possession was already breached, and in July, Kendall had driven John R. Eakins off by physical force, when Eakins claimed to have or attempted to get pos-session. Next, it is not easy to understand why Orman should desire to begin a subtenancy for that year after July had passed. Finally, John R. Eakins, after fortifying his testimony with the claim that he did not see Orman between April 1st and July 1st, and did not see him until after June had passed, admits he might have met him before the end of June, and might be mistaken about saying he had not.

### 2-c

Four days after the sale, Charles E. Eakins and some of his brothers called at the defendant's place of business on some business connected with the purchase, and the

Eakinses say that, on this occasion, defendant exhibited to them a copy of the lease to Kendall, and that, immediately on having done so, defendant went into a back room. They say that, on this occasion, Charles stated, while still in the bank, that the existence of this lease was against their bargain; that he proposed to take the copy of the lease home to show to his father, John R., and to have his father say whether this should be submitted to, or what was to be done about it. He did not, however, say this to the defendant, and employees in the bank say they did not hear any such statement. Be that as it may, no objection was made to the defendant himself, though it is admitted he was in an adjoining room, and could have been reached.

### 2-d

The lands in question were in sight of the home of some of the appellees, and adjoined some of them. Before they bought, some of them saw plowing and other farming operations on the land. The only explanation why, knowing this and knowing that the defendant himself was not cultivating the land, they relied upon his representation that there was no tenancy, is that seeing this plowing and the like did not arouse any curiosity on their part; that they were not interested in the matter, and made no inquiry under what claim of right these operations were being conducted. These operations went on for over a month before the plaintiffs bought. They circulated in the neighborhood as farmers do; they talked to their neighbors about neighborhood matters in general; but claim that this did not include any inquiry or talk as to who was operating or owning lands in that immediate neighborhood. As one witness puts it, he "didn't run around to hunt that up." It is further said that seeing this plowing aroused no curiosity; that it didn't interest the witness: therefore, he didn't ask who did plow it. This might be extended at great length, but is sufficiently typical to make such extension needless.

2-e

.The plaintiffs took their share of such crop as Kendall raised. They say, in response to leading questions, that they did not "take it as rent." They are quite evasive about it. We find statements that, when hay was found in their barn, they didn't know where it came from,—they supposed it came somewhere off the place. It is undisputed that they directed Kendall concerning delivery of part of the crop to them. This makes an attempt to impeach Kendall quite immaterial. Moreover, both in numbers and quality of testimony, those who sustain the reputation of Kendall for truth and veracity greatly outweigh those who assail him.

It is true that allegations of the defendant which set up the taking of this crop do not plead the matters alleged as a basis for estoppel or waiver. But the taking of these crops without objection, while it does not create an estoppel, does bear upon whether the plaintiffs relied upon the alleged representations of the defendant. Their conduct in this regard is inconsistent with their claim that, when they bought, they were told and believed there was no tenant in the way of immediate possession.

Much more might be said on why the claim of the plaintiffs is not sustained by a preponderance of the evidence; but it would be largely cumulative, and an elaboration. To go into the matter at great length would be of no service to the litigants, and would certainly add nothing to the value of this opinion as a law pronouncement.

The decree below is reversed, and the cause remanded to the district court for decree in harmony with this opinion; or the appellants may, at their election, have decree in this court, by application made therefor within the time provided by the rules of this court.—*Reversed and remanded.*

PRESTON, C. J., EVANS and GAYNOR, JJ., concur.